IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO.** |
| **Encompass Services Corporation,  et al** | § | **02-43582-11** |
| **DEBTOR** | § | |
| **Gilbane Building Company** | § | **ADV. NO.** |
| **PLAINTIFF** | § | **05-3465** |
| **vs.** | § | |
| **Air Systems Inc. (fka Air Systems Acquisition, Inc.),** | § | |
| **Todd A. Matherne as Disbursing Agent, Encompass** | § | |
| **Services Holding Corp., and the Board of Regents of the** | § | |
| **University of California** | § | |
| **DEFENDANTS** | § | |

**MEMORANDUM OPINION ON ASA'S MOTION (i) TO ABSTAIN, OR
ALTERNATIVELY (ii) FOR DISMISSAL OR SUMMARY JUDGMENT**

### I.      INTRODUCTION

This adversary proceeding presents an interesting attempt at using the Bankruptcy

Code as a mechanism for forum shopping.  In 2001, the plaintiff, Gilbane Building

Company (Gilbane), entered into a contract with Air Systems Incorporated (ASI), which

at the time was a wholly owned subsidiary of Encompass Services Corporation

(Encompass or the Debtor).  In late 2002, Encompass and ASI filed for Chapter 11.  As

part of the reorganization, Air Systems Acquisitions, Inc. (ASA) purchased all the assets

of ASI, including assignments of the executory contracts, and this purchase was incorporated into the confirmed plan. In November 2003, after completion of the contract at issue, ASA sued Gilbane for breach of contract and other contractual claims in California state court. In that suit, the court granted a motion for summary judgment in favor of ASA after sanctioning Gilbane for discovery abuse. Gilbane has appealed this judgment. Meanwhile, in its capacity as plaintiff in this adversary proceeding, Gilbane has raised in this Court many of the same issues presented in its losing effort in the California suit.

Concurrent with Gilbane's appeal of the California trial court decision, Gilbane is attempting to have this Court review the validity of the assignment of the executory contract under Encompass's confirmed plan. ASA has questioned whether this Court has jurisdiction over this adversary proceeding. This Court finds that it does not have post-confirmation jurisdiction over this proceeding. Further, even if post-confirmation jurisdiction does exist, it is appropriate for this Court to permissively abstain from hearing this proceeding. The purpose of this Memorandum Opinion is to set forth how the Court has arrived at this decision.

## II.    FINDINGS OF FACT

The facts, either as stipulated to or admitted by counsel of record, or as determined from the record, in chronological order, are as follows:

1. On or about August 8, 2001, ASI entered into a contract with Gilbane to provide HVAC and mechanical services work at the Mission Bay Building at the University of California San Francisco (the "Subcontract"). Gilbane was the general contractor on the project and ASI was one of the subcontractors.

(Declaration of Art Williams in Support of ASA's Summary Disposition Motion, Adversary Docket No. 40, Appendix A at ¶ 7).  The contract contains a provision prohibiting ASI from assigning the contract without written consent from Gilbane.  (*Id*. at Exhibit 1, ¶ 9.9).

2.  On November 19, 2002, Encompass and its subsidiaries, including ASI, filed for Chapter 11 in the Southern District of Texas.

3.  On February 21, 2003, ASI and Encompass filed an Expedited Motion to Sell Certain Assets of Air Systems, Inc. to ASA.  (Docket No. 1393).

4.  On February 24, 2003, ASA sent a letter to Scott Chilcote, Gilbane's project executive at the Mission Bay Building site, notifying him about the pending approval of the sale of ASI to ASA.  (Declaration of Art Williams, *supra*, Exhibit 2).

5.  On March 17, 2003, this Court approved the Purchase and Sale Agreement ("PSA") entered into among ASI, Encompass, and ASA.  (Docket No. 1836).  The PSA included a term prohibiting the transfer of assets not freely transferable without the consent of a third party.  (Docket No. 1936, Exhibit A, at §1.8).  The transaction was completed the next day on March 18, 2003.  (Declaration of Art Williams, *supra*, at ¶ 12).  Thereafter, ASA performed under the Subcontract.  (*Id.* at ¶ 14).

6.  On May 23, 2003, this Court confirmed the Debtor's Second Amended Joint Plan of Reorganization of Encompass Services Corporation and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code (the "Plan" or the "Confirmed Plan").  (Docket No. 2072).

7. In the latter part of 2003, the Subcontract was completed. (Declaration of Art Williams, *supra*, at ¶ 17).

8. On November 7, 2003, ASA filed suit against Gilbane in the Superior Court of California, County of San Francisco. This suit is styled *Air Sys. Acquisition, Inc. v. Gilbane Bldg Co.,* Case No. CGC-03-426218. ASA sought damages that it claimed Gilbane owed under the Subcontract. (Declaration of Gretchen E. Dent in Support of ASA's Summary Disposition Motion, at ¶ 2).

9. On March 30, 2005, the California state court sanctioned Gilbane with both evidentiary and monetary sanctions for discovery abuse. (*Id.* at Exhibit 2). This order prevented Gilbane from adducing evidence relating to the Interrogatories, Requests for Admissions, and Request for Production to which it failed to respond. (*Id.*)

10. On June 3, 2005, Gilbane submitted to the California court its (and co-defendant, Traveler's Insurance's) Joint Supplemental Opposition to ASA's Motion for Summary Judgment/Adjudication. This response argued that Gilbane failed to give consent to the assignment in writing and that the bankruptcy estates of ASA and Encompass could not have "validly assigned the subcontract without Gilbane's prior written consent because the Air Systems Bankruptcy Estate (a) did not assume the subcontract; and (b) ASI did not provide adequate assurance of future performance, both of which are mandatory under Section 365(f) of the United States Bankruptcy Code." (Declaration of Gretchen E. Dent, Exhibit 3 at 2:8-18).

11. On June 10, 2005, Gilbane initiated this adversary proceeding. (Adversary Docket No. 1). Gilbane's initial complaint named as defendants ASA, Encompass Holding, Todd A. Matherne (the Dispersing Agent appointed to the main bankruptcy case), and the Board of Regents of the University of California. All defendants except ASA were dismissed from the suit on July 28, 2005. (Adversary Docket No. 24). In its complaint, Gilbane argues that ASA has no standing to sue because the assignment from Encompass/ASI was invalid. Gilbane also asserts that this Court has post-confirmation jurisdiction over the claims which Gilbane asserts. As relief, Gilbane seeks (i) a declaration that the assignment was invalid; (ii) a declaration that the Subcontract remains in the Debtor's estate; and (iii) an injunction against ASA from further prosecuting the Subcontract claims in California state court. (Adversary Docket No. 1).

12. On September 26, 2005, Gilbane moved for summary judgment against ASA in the present proceeding. (Adversary Docket No. 38). On the same day, ASA filed a Motion to (i) Abstain, or alternatively (ii) for Dismissal or Summary Judgment. (Adversary Docket No. 40). Both parties thoroughly briefed the issues raised in these motions, including the jurisdictional issue.

13. On October 6, 2005, a hearing was held on the competing Motions for Summary Judgment and Motion for Abstention. The jurisdictional issues were extensively argued, and this Court requested further briefing on certain issues raised at the hearing. The Court took the matter under advisement pending the additional briefing to be done.

14. On November 16, 2005, this Court issued its ruling orally from the bench.

### III.    CONCLUSIONS OF LAW REGARDING JURISDICTION

Gilbane strenuously argues that this Court has subject matter jurisdiction over this post-confirmation suit because (a) it is a core proceeding; (b) it relates to pre-confirmation orders; and (c) it concerns rights arising from Bankruptcy Rule 6006 and Section 365 of the Bankruptcy Code.   Gilbane has also argued that this Court has exclusive jurisdiction because these issues relate to the clarification of one of its own orders, namely the Sale Order that approved the PSA, which was incorporated by reference into the Confirmed Plan. ASA argues that this Court does not have jurisdiction over this dispute or, alternatively, even if it does, it should abstain.

### A.    Congressional Authorization of Bankruptcy Jurisdiction

Bankruptcy courts are courts of limited jurisdiction, only having the authority to hear that class of cases "'endowed [upon them] by the Constitution and. . . conferred by Congress.'" *In re Kevco, Inc.*, 309 B.R. 458, 464 (Bankr. N.D. Tex. 2004) (quoting *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982)).   Because bankruptcy judges are non-Article III judges, they are only permitted to hear that class of cases which Congress has determined the district courts may assign to them. *See, e.g.*, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n.2 (1995)(Ginsburg, J., concurring).   Congress has endowed the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).   This Congressional mandate provides the district courts with jurisdiction over four types of bankruptcy matters: "(1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3)

proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." *U.S. Brass Corp. v. Travelers, Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002) (quoting Sections 28 U.S.C. 1334(a)-(b)). The Fifth Circuit has described these four classes of cases as the jurisdictional boundaries drawn around the bankruptcy courts. *See id.* at 304.

The district courts are authorized to refer to the bankruptcy courts for adjudication of "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11. . ." 28 U.S.C. § 157(a). "Cases under title 11" refers to the bankruptcy case itself, with all other proceedings emanating from the case either "arising under," "arising in," or "related to." *In re U.S. Brass Corp.*, 301 F.3d at 304. By way of one example only, an adversary proceeding to recover preferences under 11 U.S.C. § 547 is a proceeding arising under title 11. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 325 n.13 (1995) (Stevens, J. dissenting). In order to have jurisdiction, a bankruptcy court must determine that a case is at least "related to" a bankruptcy proceeding. *In re Brass Corp.*, 301 F.3d at 304. To make this determination, the court must look to 28 U.S.C. § 157(b)(1), which delineates the exact scope of the bankruptcy court's jurisdiction. Section 157(b)(1) gives bankruptcy courts the power to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. . . ."

Based on this language, courts have determined that a non-core proceeding is equated with a proceeding that is "related to" the underlying bankruptcy case. *See In re Stonebridge Tech., Inc.*, 430 F. 3d 260, 266 (5th Cir. 2005). Non-core proceedings may be heard by the bankruptcy judge, but any findings of fact and conclusions of law

proposed by the bankruptcy judge must be submitted to the district court for entry of a final order or judgment. 28 U.S.C. § 157(c)(1). The Fifth Circuit has held that "§ 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings; therefore, a 'proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re U.S. Brass Corp.*, 301 F.3d at 304 (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

**B.    The Present Adversary Proceeding is a Non-Core Proceeding**

As a preliminary matter, because this determination has bearing on both the jurisdictional determination and permissive abstention, this Court will address whether the adversary proceeding at bar is core or non-core. Gilbane has argued that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (L) and (O). The relevant sections state:

> Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate; . . .
>
> (E) orders to turn over property of the estate; . . .
>
> (L) confirmations of plans; . . .
>
> (O) other proceedings affecting the liquidation of the assets of the
>
> estate or the adjustment of the debtor-creditor or the equity security
>
> holder relationship. . . .

Gilbane mistakenly characterizes this proceeding as an action affecting the estate. It is well established in the Fifth Circuit, and many other circuits, that once the plan of reorganization has been confirmed, the estate ceases to exist. *In re U.S. Brass*, 301 F.3d

at 304; *Bank of Louisiana v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Texas, Inc.*), 266 F.3d 388, 390 (5th Cir. 2001) (citing *In re Fairfield Cmtys. Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998); (*In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993)); *In re Enron Corp. Sec, Derivative & ERISA Litig.*, 2005 WL 1745471 (S.D. Tex. 2005) (hereinafter *In re Enron*). Without an estate to administer or to which to return assets, this Court can hardly determine the suit at bar to be a core proceeding under § 157(b)(2)(A) and (E), or under the provision in (O) that gives core status to "proceedings affecting the liquidation of the assets of the estate. . . ." The remainder of § 157(b)(2)(O), which concerns "proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship," is inapplicable to this proceeding as well. The dispute between Gilbane and ASA has relatively nothing to do with Encompass and its subsidiaries, as neither party to this suit is involved in the underlying bankruptcy as either a debtor or a creditor.

The key issues in the suit at bar do involve an aspect of the Confirmed Plan, which lends support to the argument that this dispute is a core proceeding under § 157(b)(2)(L). However, this Court's determination will not have a substantial impact on a plan that Encompass, as a reorganized debtor, has been operating under for the last two years. The issue at bar can be distinguished from *In re Case*, 937 F. 2d 1014 (5th Cir. 1991), in which the Fifth Circuit found that a breach of contract claim on a note executed as part of a settlement agreement incorporated into the debtor's plan of reorganization was a core proceeding under § 157(b)(2). *Id.* at 1017. There, the court found that the promissory note and settlement agreement were not independent from the bankruptcy; they were an integral part of formulating an acceptable plan of reorganization. *Id.* at 1019-20. The court also found that the debtor's attempt to satisfy the terms of the

promissory note by providing services in lieu of cash was an alteration of the express terms of the plan and therefore would have constituted an "'adjustment of the debtor-creditor relationship under § 157(b)(2)(O).'" *Id.* at 1020. Conversely, in the present proceeding, the Subcontract was independent from the underlying bankruptcy, and voiding the assignment of the Subcontract would not substantially modify the express terms of the Confirmed Plan such that the debtor-creditor relationship would be affected. Therefore, this Court finds that this proceeding is non-core under 28 U.S.C. § 157. Because it is non-core, this suit can only be a "related to" proceeding.

## C.    Framework for "Related to" Jurisdiction

Bankruptcy courts may retain jurisdiction to hear a proceeding that is related to a bankruptcy case. 28 U.S.C. § 157(c). The Congressional grant of jurisdiction found in 28 U.S.C. § 1334 does not limit bankruptcy jurisdiction to pre-confirmation issues. Most circuits generally agree that "related to" jurisdiction for post-confirmation disputes is warranted when the outcome of the suit could have any *conceivable* effect on the administration of the estate in bankruptcy. *In re Stonebridge Tech., Inc.*, 430 F.3d at 266 (citing *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)). The Second Circuit adopted a slightly different test in *In re Turner*, using a "significant connection" theory of relatedness. *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983).

In recent years, the Fifth Circuit has adopted a more exacting view of "related to" jurisdiction, focusing on the debtor's emergence from bankruptcy protection. *In re Craig's Stores*, 266 F.3d at 390. In *In re Craig's Stores*, the court noted that upon confirmation of the plan, the debtor's estate, and therefore the bankruptcy court's jurisdiction, ceases to exist. *Id.* Under this view, the bankruptcy court tosses the newly

reorganized debtor out of the warmth of the "'protective wraps'" of bankruptcy into the "'cold, cruel business world. . . .'" *Id.* at 390-91.   In *In re U.S. Brass Corp.*, the Fifth Circuit added specificity to its ruling in *In re Craig's Stores* by holding that a bankruptcy court does indeed have post-confirmation jurisdiction, but only for disputes concerning the implementation or execution of a confirmed plan pursuant to 28 U.S.C. § 1142(b) or over core proceedings under § 157. 301 F.3d at 304-06

*In re Coho Energy, Inc.*, 309 B.R. 217 (Bankr. N.D. Tex. 2004) highlighted several important factors from the combined opinions of *In re Craig's Stores* and *In re U.S. Brass Corp. See* 309 B.R. at 220-21. In *In re Coho Energy, Inc.*, the debtor filed an adversary proceeding against several defendants for breach of contract, an accounting of expenses, and several other state law claims that arose out of violations of operating agreements and other agreements incorporated into the plan of reorganization. *Id.* at 218-19. The plan contained a provision that the estate's causes of actions would vest in a liquidating trust for the benefit of and distribution to creditors of the estate. *Id.* at 218. The defendants challenged the bankruptcy court's subject matter jurisdiction on the basis that the proceeding was filed after confirmation of the plan. *Id.* at 219. The *Coho* court found that subject matter jurisdiction did remain in the bankruptcy court on the basis that the claims arose pre-petition, the plan incorporated the prosecution of the claims, and the plan also provided that any proceeds received would be distributed to the creditors under the provisions of the plan—thus impacting compliance with the plan. *Id.* at 221; *cf. In re U.S. Brass Corp.*, 301 F.3d at 301-03 (where the claims at issue arose pre-petition, the plan incorporated provisions for resolution of the claim and distribution of any recovery,

and amendments to this procedure would impact the full consummation of the plan).  *See also In re Enron*, 2005 WL 1745471.

Based on the Fifth Circuit decisions and the case law applying those rulings, this Court has identified six pertinent factors for a post-confirmation subject matter jurisdiction inquiry:  (1) when the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping.

**D.      Application of the Six Factors to the Present Adversary Proceeding**

   1.      When the claim at issue arose

Many of the cases analyzing post-confirmation jurisdiction have found that when the claim arose pre-petition, the court retains jurisdiction, particularly when the claim has been incorporated in the plan of reorganization.  *In re Coho Energy, Inc.*, 309 B.R. at 221; *In re U.S. Brass Corp.*, 301 F.3d at 299-300.  In *In re Craig's Stores*, where the court found that it did not have post-confirmation jurisdiction, the claim at issue arose post-petition and post-confirmation out of a contract that was entered into between the parties pre-petition.  266 F.3d at 391.  Actual litigation, or at least antagonism between the parties, must be present on the petition date for the court to assert jurisdiction.  *See id.*

The present adversary proceeding between Gilbane and ASA is more analogous to *In re Craig's Stores* than to *In re Coho Energy, Inc.* or *In re U.S. Brass Corp.*  The Subcontract was in existence in the same or substantially similar form pre-petition.  *See In re Craig's Stores*, 266 F.3d at 391.  Gilbane argues that ASA's submission of an Extra

Work Claim one month before the Chapter 11 petition was filed is sufficient to show antagonism between the parties. This Court disagrees. The Extra Work Claim was simply a claim for payment submitted between two contracting parties, whereas the claims at issue in *In re U.S. Brass* and *In re Coho Energy, Inc.* had both accelerated to the point of near litigation before the bankruptcy petition was filed. *In re Coho Energy, Inc.*, 309 B.R. at 221 (noting that while the claims were not formally asserted pre-petition, they were preserved under the Plan); *See In re U.S. Brass Corp.*, 301 F.3d at 300 (reciting the plaintiff/debtor's argument that "the insurers (defendants) unwillingness to defend or provide coverage for the lawsuits caused the company to file for bankruptcy protection"). Accordingly, this first factor points to a finding of no jurisdiction.

      2.    <u>Provisions in the confirmed plan</u>

There are several provisions in a confirmed plan that must be examined to determine whether this factor supports a finding of post-confirmation jurisdiction. A court must examine the retention of jurisdiction language contained in the plan, the disputed provisions in the Plan itself, and the facts or law deriving from the plan.

      (i) Retention of jurisdiction

The retention of jurisdiction provisions are one important factor preserving a bankruptcy court's post-confirmation jurisdiction. *In re Enron*, 2005 WL 1745471, at *5. A plan may not confer jurisdiction absent statutory authority. *In re U.S. Brass, Corp.*, 301 F.3d at 303. "While a plan may not confer or expand subject matter jurisdiction, some courts find a retention of jurisdiction in the plan to be a prerequisite to post-confirmation jurisdiction. In other words, a plan which fails to retain subject matter jurisdiction may leave it lacking, but a plan cannot create jurisdiction where it does not

- 13 -

otherwise exist." *In re Coho Energy, Inc.*, 309 B.R. at 220 n.4; *cf. In re U.S. Brass, Corp.*, 301 F.3d at 303 (noting that the plan contained a broad retention of jurisdiction provision). The retention of jurisdiction language in the plan does not need to cover the specific act at issue; however, it does need to be sufficiently broad to encompass potential post-confirmation proceedings. *In re Enron*, 2005 WL 1745471, at *5.

In the present case, the Debtor's Confirmed Plan provides for retention of jurisdiction in Article XII. Article XII, section h gives this Court continuing jurisdiction to "hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement hereof, and all contracts, instruments, and other agreements executed in connection with this Plan." The Confirmed Plan clearly provides for continuing jurisdiction over matters that pertain to the implementation of the contracts assumed by the Confirmed Plan. Thus, this language favors a finding that this Court has jurisdiction.

        (ii)    Language in the plan

This adversary proceeding does not presently implicate implementation of the Confirmed Plan because the sale of ASI's assets to ASA had already occurred and the Subcontract had already been completed pursuant to the Confirmed Plan. Neither party disputes that the subcontract has been performed. Gilbane is seeking a declaration that the "Subcontract was not sold to ASA and is held by Encompass Holding" based on the argument that the Subcontract could not be assumed under the express language of the PSA and the anti-assignment clause contained in the Subcontract. *See* Gilbane's Complaint for Declaratory Judgment, ¶ 43. The most glaring problem with this argument is that the order issued by this Court confirming the Plan expressly states that "the

Assigned Contracts shall, upon Assignment to the Buyer, be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code." This is hardly the type of language that necessitates clarification by only a bankruptcy court. A state court of competent jurisdiction can just as easily interpret the impact of this language on the validity of the Subcontract. Thus, the language of the Confirmed Plan favors a holding that this Court has no jurisdiction over this adversary proceeding.

(iii) Facts and law arising from the plan

Both the facts and law implicated in this proceeding point to this Court not having continuing jurisdiction. *In re U.S. Brass Corp.*, 301 F.3d at 303; *See In re Craig's Stores*, 266 F.3d at 391; *In re Kevco*, 309 B.R. at 464. A confirmed plan is a contract in its own right. *In re U.S. Brass Corp.*, 301 F.3d at 307; *In re Coho Energy Inc.*, 309 B.R. at 219. As such, it can be interpreted by any court of competent jurisdiction:

> [T]he basic theory of reorganization proceedings is that the debtor...has been rehabilitated by the plan so that it can carry on its business. The corollary of this is that [a reorganized debtor] and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under the tutelage of the bankruptcy court.

*In re Enron,* 2005 WL 1745471 at *5 (quoting *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 339 (N.D.N.Y. 2002)).

The facts underlying this proceeding were all asserted and determined by the California state court and are in the process of appeal in the California appellate court system.

- 15 -

The Subcontract that is the subject of this litigation was not created by the Confirmed Plan; the Plan merely incorporated assumption of the Subcontract authorized in the PSA. *See* Docket Nos. 1836 and 2072. There were no obligations between the Debtor and Gilbane, or between ASA and Gilbane, created by implementation of the Confirmed Plan—these obligations had already arisen pre-petition. *See In re Craig's Stores*, 266 F.3d at 391 (determining no jurisdiction existed in part because the dispute did not arise as a result of "any obligation created by the debtor's reorganization plan"). This claim also does not involve a trust created by the Confirmed Plan, which has been a factor supporting post confirmation jurisdiction. *See In re U.S. Brass, Corp.*, 301 F.3d at 301 (proceeds from the underlying litigation would be paid over to a liquidating trust); *In re Coho Energy, Inc.*, 309 B.R. at 221. In fact, Gilbane dropped as a party the Dispersing Agent, the closest entity to a litigating/liquidating trust, from this adversary proceeding shortly after it was filed. *See* Adversary Docket No. 24.

The effect of California law on the non-assignment clause in the contract between ASA and Gilbane is implicated in this matter. Although this fact is not dispositive, the Court may consider it in its determination of jurisdiction. Here, there is no question that California law plays a key role in determining the contractual dispute between the parties.

On balance, the provisions in the Confirmed Plan weigh more heavily in favor of a finding of no jurisdiction than a finding that this Court has jurisdiction.

    3.    Whether substantial consummation has occurred

An action impacting a confirmed, but not substantially consummated plan would have an impact on the debtor-creditor relationship, a factor which favors continuing jurisdiction. *See In re Craig's Stores*, 266 F.3d at 391. In the case at bar, the Confirmed

Plan was confirmed on May 28, 2003. The Notice of Occurrence of Effective Date, entered on June 10, 2003, stated that the Effective Date occurred on June 9, 2003. See Docket No. 2072 and 2570. Yet, this adversary proceeding was not commenced until June 10, 2005—more than two years after the Effective Date. There has been no allegation that the Confirmed Plan has not been substantially consummated under 11 U.S.C. § 1101(2), and this Court is not going to assume that after a two-year span it has not. The impact on the post confirmation distributions to creditors is insufficient for a finding of continuing jurisdiction. *See In re Craig's Stores*, 266 F.3d at 391. Therefore, this factor weighs against continuing jurisdiction.

Additionally, Gilbane's requested relief would in effect return assets to Encompass's estate—an entity which no longer exists. According to *In re Craig's Stores*, the Debtor's estate no longer exists after the confirmation of a plan. 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.")(quoting *In re Fairfield Cmty., Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998)). In the case at bar, there is no longer an estate of Encompass, as the Plan is confirmed and substantially consummated.

    4.    Parties involved

Although it is true that litigation where the debtor is not a party can still constitute 'related to' jurisdiction, such jurisdiction continues only if the suit has an impact on the bankruptcy estate. *In re Enron*, 2005 WL 1745471 at *4, n.19. In the instant case, there is no estate left to be administered. *In re Craig's Stores*, 266 F.3d at 390. The fact that

the Confirmed Plan has been in effect for over two years, the Debtor's estate has ceased to exist, and neither party is a debtor, supports a finding of no jurisdiction.

     5.    Whether state law or bankruptcy law applies

The PSA states that California law governs the agreement. The dispute over the PBA is between two non-debtor entities who have already litigated in the state court of California. While there are certainly bankruptcy issues involved, the fact is that a California court applying California law has issued a judgment. These circumstances weigh more heavily in favor of a finding of no jurisdiction rather than one of jurisdiction. Given the substantial time that the California courts have already spent adjudicating this dispute, they are more informed on the claims at issue in the assumed Subcontract.

     6.    Indices of forum shopping

Although this factor has not been mentioned in previous cases discussing whether a bankruptcy court has continuing 'related to' jurisdiction, in the present proceeding this Court finds the indicia of forum shopping to be an important factor. "All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping." *In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987). ASA filed the original action in California state court in November 2003, seeking to recover money owed on the work it performed under the Subcontract. That suit was disposed of in favor of ASA on a motion for summary judgment, in part because of sanctions imposed against Gilbane in March 2005 for discovery abuse that precluded it from presenting certain pieces of evidence. Seven days after Gilbane filed its answer to the motion for summary judgment, which could not refer to the excluded evidence, Gilbane filed this adversary proceeding. The California state

court entered a judgment for ASA on September 13, 2005, and Gilbane has appealed in the California state court system.

Gilbane has argued in both the California state court action and in this adversary proceeding that it had no notice of the assignment of the Subcontract from Encompass/ASI to ASA. However, Gilbane did have notice of the assignment no later than the date of receipt of the original complaint ASA filed in California, even if Gilbane had no constructive notice before that time. Therefore, Gilbane could have brought this adversary proceeding two years ago, immediately after the effective date of the Confirmed Plan. Instead, Gilbane chose to litigate in a California state court, and now that it has lost at the trial level, Gilbane wants this Court to assert jurisdiction over the matter and in effect terminate the ongoing appeal in California. This, the Court will not do. This Bankruptcy Court is not an insurer against the outcome of bad choices.

Many of the issues asserted in this adversary proceeding have a relationship to bankruptcy law and a bankruptcy court's power to interpret and implement the plan it confirmed, particularly the requirements for assigning executory contracts found in 11 U.S.C. § 365. Regardless, this Court finds that the other factors pertinent in the 'related to' jurisdictional inquiry—when the claim arose, certain relevant provisions in the Confirmed Plan, how far the reorganization has proceeded, what parties are involved, whether state law or bankruptcy law applies, and the indices of forum shopping—all lead to the conclusion that assertion of jurisdiction is not appropriate in this proceeding.

## IV.    CONCLUSIONS OF LAW REGARDING PERMISSIVE ABSTENTION

Alternatively, even if this Court does have jurisdiction over the adversary proceeding, ASA has asked this Court to permissively abstain from hearing this

proceeding. Permissive abstention is authorized statutorily by 28 U.S.C. § 1334(c)(1), as a reflection of the United States Supreme Court's decision in *Marathon* that non-Article III bankruptcy courts should not determine contract claims based on state law. *Northern. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *In re Republic Reader's Serv. Inc.*, 81 B.R. at 425. Even after Congress statutorily placed the bankruptcy courts within the district courts through the 1984 Amendments, bankruptcy courts are not mandated to hear claims "related to" an underlying bankruptcy case when these claims fall under the statutory and case law considerations for permissive abstention. *In re Republic Reader's Serv, Inc.*, 81 B.R. at 425. "The abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). The broad grant of jurisdiction found in 28 U.S.C. Section 1334(a) is only over the actual bankruptcy case itself. *In re Republic Reader's Serv. Inc.*, 81 B.R. at 426. Jurisdiction over "civil proceedings arising under Title 11, or arising in or related to cases under Title 11" is concurrent with "courts other than the district court. . . ." 28 U.S.C. § 1334(b). This provision narrows the grant of exclusive jurisdiction exercised by the bankruptcy court.

28 U.S.C. § 1334(c)(1) reads: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Whereas mandatory abstention must be raised by motion of a party, permissive abstention may be raised *sua sponte*. *In re Gober*, 100 F.3d

1195,  1207 n.10 (5th Cir. 1996).  The decision to abstain is left up to the broad discretion

of the bankruptcy court.  *In re Wood*, 825 F.2d at 93.  There is nothing that will prevent a

determination that permissive abstention is appropriate even where "some, but not all, of

the requirements for mandatory abstention are met."  *In re Gober*, 100 F.3d at 1206.

      The bankruptcy court may permissively abstain from adjudicating an adversary

proceeding regardless of whether it is core or non-core under 28 U.S.C. Section 157.

Permissive abstention is more appropriate when the proceeding is non-core or merely

'related to' the underlying bankruptcy.    As determined above, in the discussion

concerning 'related to' jurisdiction, this adversary proceeding is non-core.

      Once a determination of whether the proceeding is core or non-core has been made,

the court should look to several factors to determine if abstention is appropriate.  These

factors were articulated quite clearly in *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785

(E.D. Tex. 2001).  They include:

1.  the effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention;
2.  extent to which state law issues predominate over bankruptcy issues;
3.  difficult or unsettled nature of applicable law;
4.  presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
5.  jurisdictional basis, if any, other than § 1334;
6.  degree of relatedness or remoteness of proceeding to main bankruptcy case;
7.  the substance rather than the form of an asserted core proceeding;
8.  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9.  the burden of the bankruptcy court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the existence of a right to a jury trial;
12. the presence in the proceeding of nondebtor parties;
13. comity; and
14. the possibility of prejudice to other parties in the action.

*Id.* (citing *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993); *see In re Republic Reader's Serv. Inc.*, 81 B.R. at 429; *cf. In re Coho Energy, Inc.*, 309 B.R. at 221-22.

Upon consideration of these factors, this Court holds that permissive abstention in this adversary proceeding is appropriate even if it has 'related to' jurisdiction under Section 1334. Because there is no estate in existence, there can be no effect on the administration of the Debtor's estate. Additionally, the length of time between the confirmation of the Confirmed Plan and the commencement of this proceeding points toward a finding of little effect on the remaining efforts (if any) to fully consummate the Plan. Although bankruptcy law provides the basis for filing this adversary proceeding between Gilbane and ASA, the underlying claim is fundamentally a state law issue. This claim is not a novel issue of law—it is, as has been asserted, a contract interpretation issue not requiring the expertise of the bankruptcy court.

This proceeding is also not related to the main bankruptcy case except that it involves the assignment of a contract confirmed by this Court and incorporated into the terms of the Confirmed Plan. The original Subcontract was entered into by a subsidiary of the Debtor, not the Debtor itself. The Subcontract was assigned well over two years ago, before the Plan was confirmed, and has been fully performed. The underlying issues involve a breach of contract between two non-debtors. These facts militate against a finding that this Court should adjudicate this litigation rather than allow the California suit to proceed through the appeal process.

Finally, the most important factor that directs this Court toward abstention is the overwhelming presence of indications that Gilbane is trying to take the proverbial second bite at the apple. As discussed above, Gilbane could have filed this proceeding over two

years ago, when Gilbane claims to have first had official notice of the underlying bankruptcy. However, Gilbane chose not to do so. Whether this was a strategic move by Gilbane, or an oversight, does not matter to this Court. If this Court were to grant jurisdiction and adjudicate the suit, it would undoubtedly become involved in *Rooker-Feldman* issues of comity with the California state court. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923). This Court would ultimately have to review the decision by the California trial court to grant the motion for summary judgment in favor of ASA because many of the same issues were raised in that motion. In effect, this Court would be challenging the California state trial court's primary jurisdiction to adjudicate the dispute and the California appellate court's jurisdiction to entertain the appeal. This Court is not the proper forum to make that challenge. Abstaining from hearing this suit will not result in prejudice to either party (or third parties) because these issues have been raised and adjudicated in what this Court believes was a proper forum: the state court in California.

## V.   CONCLUSION

Gilbane's attempt to take a second bite at the apple will go unfulfilled. This Court cannot find jurisdiction in a situation where all the claims at issue have been determined in a state court proceeding and the Debtor's estate no longer exists. Although there are issues raised in this suit that implicate bankruptcy law, a state court will be able to sufficiently determine the effect of the assignment clause in the PSA and the Debtor's Confirmed Plan. Moreover, even if this Court does have jurisdiction over this proceeding, the interests of comity and Gilbane's blatant attempt at forum shopping dictate that permissive abstention is appropriate.

For the reasons set forth above, this Court grants ASA's Motion for Dismissal for lack of jurisdiction. A separate order granting the Motion will be entered on the docket simultaneously with the entry of this Memorandum Opinion on the docket.

Signed this 26th day of January, 2006.

Jeff Bohm
U.S. Bankruptcy Judge